We'll now move to the third case of the day, United States v. Jarigese, Appeal No. 20-1485. Mr. Shepard for the defendant. Oops, I thought I saw Mr. Shepard there a moment ago. He's coming in. Okay. Thank you. Per our technical experts over here. Okay. Thank heavens. Thank heavens is right. Aha. Okay. Mr. Shepard. Welcome back. You're still on mute. I don't know if you, how much you heard of me, but I'll, I'll go ahead and call the case, which we're, we're now hearing the appeal in U.S. against Jarigese, No. 20-1485. And we'll hear first from Mr. Shepard for the defense. Good morning, your honors. May it please the court. My name is Adam Shepard and I represent the appellant, Michael Jargis. Mr. Jargis is a 67 year old with no criminal history who was working as a contractor for tower construction, which was a construction company that received contracts pursuant to transactions with the former mayor of Markham, David Webb. This appeal focuses largely on sentencing, and if I may begin with the sentencing issue, an error on which both parties agree. The parties agree that error occurred when the district court judge failed to verify that Mr. Jargis read his pre-sentence investigation report, failed to verify that he reviewed it with his lawyer, and failed to inquire if Mr. Jargis wished to challenge any facts in that report. Where the parties diverge is the government submits that that is harmless error. We don't concur. This case, unlike many others that were discussed in the brief, doesn't involve a sentencing memorandum where the pre-sentence investigation report was discussed, or in this case it wasn't even cited in the defendant's sentencing. Mr. Shepard, if I could just step back a moment, please. Because I may have misunderstood your argument. Is your argument that your client was denied the opportunity to review it, or that the district court did not confirm that your client had reviewed the PSR, or that the district court did not give your client the opportunity to make separate objections from what his attorney was making? Our argument is that the district court did not inquire whether he reviewed it, and if he had, the defendant would have voiced a challenge to a fact that we raised, whether he was the vice president or the president of CASEL. So is your client denying that he had the opportunity to review the PSR? He's denying that he reviewed it with his lawyer. I didn't see that factually anywhere. Correct. Do you agree that you have forfeited this argument by not objecting to it before the district court, and so plain error would apply? No, Your Honor, because I was trying to rack my mind as to when the defendant could raise it in the district court if the district court never brought it up, particularly when the His lawyer could have raised it. His lawyer could have raised it at any point during sentencing. But the way we understand the purpose for the rule is kind of a judicial backstop in case the lawyer slips up and doesn't review it with his lawyer. The lawyer would then be called upon to essentially throw himself under the bus by saying, Judge, we didn't review it together. That's not unusual for a lawyer to say we haven't had a chance to review it. We need more time. But it didn't occur in this case, and had the rule been honored, maybe that would have occurred. That's why I think it falls on the judge. And I'm getting this from the Roan decision. I'm not putting my own interpretation on it. The Seventh Circuit's, this court's decision in Roan. The purpose of the rule is so that the judge could confirm in case the lawyer fails. Is there any anything else in the PSR that you're claiming your client would have clarified or corrected under this vice president other than this vice president president distinction? No, not factually. So why isn't, whether we apply plain air or harmless air, why wouldn't it be harmless given that both the government and the Defense Council at sentencing made clear that your client was the vice president, not the president of Castle? But the judge did not rule one way or the other on that. What the judge did do was adopt the PSR in the statement of reasons. So without an oral explanation, all that's in the record is the judge's adoption of the PSR, which lists him as the president. We don't know what effect that factual distinction would have with the district court, but we're not required to prove, but for, we're not required to prove a change in the sentencing. We are required to prove that the questions weren't asked and that there was a factual error. I'm citing the Atkinson case for that, which we discuss in our reply brief. So our position is maybe the outcome of sentencing would change. Had we known that was clearly an aggravating factor that was driving the sentence, the owner, Robert Blum was involved in criminal activity. And our position is that a vice president, unlike a president, doesn't assume the alter ego of a company. The next issue for sentencing is this adoption of the PSR on the statement of reasons, but not in open court. We submit that that is a rule 3553 open court violation. And I think particularly probative is that in the sentencing transcript, the government asked the court to adopt the PSR for the co-defendant, the corporate co-defendant Tower. And the government said as a procedural issue, but the same issue wasn't raised for Mr. Jargis. So he was deprived of the benefit that the co-defendant got of hearing whether or not the judge adopted the PSR. What requires a judge to adopt the PSR? It's whether there was a dispute. I think the judge wouldn't be required to rule on whether there was a dispute in the absence of a factual dispute like we had in this case. The language is that it seems to say that the judge may adopt the PSR. So it's unclear whether it's mandatory that a judge always adopts the PSR in the absence of a dispute or discretionary. But our point is given the judge actually did adopt the PSR because the judge adopted it on the statement of reasons, he checked the box. How is that argument impacted by the fact that what controls that sentencing is what is said in open court, not in any written submissions? So nothing was said in open court about adopting the PSR. Why wouldn't that control? It deprives the defendant of the basis for his sentence. It's the, I agree with your honor, that the oral pronouncement of the sentence governs. But here when the defendant is now receiving his written judgment after the fact and the statement of reasons, he's seen another basis that was not explained to him in open court. It constitutes a due process violation is our position. As to the third error that we raised regarding sentencing, that the judge relied on the clearly erroneous fact of that the defendant called Nancy Bloom as a witness who the judge deemed pejorious. We believe that was prejudicial because right after the judge made that comment, he said, it's not a pleasant thing for a judge to listen to a witness lie to the jury or to the court. He then uses the word so, so I cannot credit your position that you should basically receive a slap on the wrist. And that word so I think is a transition word. It shows that the defendants, the judge's belief that the defendant had called Nancy Blum was utmost in his mind when he began to impose the sentence. Wasn't the court's point about Nancy Blum, not who called her, but the fact that the defendant relied on her testimony in arguing to the jury. But I think that it was false. In the transcript in the closing argument, the defendant doesn't wrap his arms around Nancy Blum. He says, you may hear from Mr. Buck, who is Towers representative. That's about Nancy Blum. In fact, in the opening statement, Mr. Conniff, Mr. Jarvis's closing argument, right? But in closing, he doesn't wrap his arms around it, other than to say that you'll hear from Mr. Buck about it. And my point about opening statement, he concedes that cat, which was the subject of Nancy Blum's testimony was a phony business that comes from Mr. Jarvis's counsel right in opening statement. I see him. I approach him. Well, I guess if I could follow up there a little bit, Mr. Mr. Shepard, didn't in closing, though, didn't Mr. Jarvis argue that the cat check was for legitimate work done? He said he said that was the testimony. And other than Nancy Blum's testimony, is there other evidence that supported that assertion? There's no introduction by the defense of other evidence. Okay. Thank you. If you want to reserve the rest for rebuttal, that's fine. Let's see. Then, Mr. Dallier for the government, please, the court. Steve Dallier, on behalf of the United States of America, District Courts error, neglecting to confirm that the defendant had reviewed the PSR was, in fact, a harmless error. The record shows that the defendant had an opportunity to review the PSR, did review it and had no objection to it. Near the outset of that sentencing, the defendant's sentencing hearing, the district court judge discussed the PSR and the guidelines contained within that PSR and defense counsel said we and as a quote, we have no objection to the guidelines. We obviously indicates that he and his client had talked about it and agreed to it. Around that same time, the court referenced the PSR and said he had read the PSR and he of support on behalf of the defendant. The defense counsel then interrupts and says it's actually 76 letters and says nothing else about the PSR. Later in that sentencing hearing, the defense counsel says that the defendant knew that he could get a benefit under the guidelines for accepting responsibility. He made the decision not to. The defense counsel later in the sentencing hearing makes multiple objections to conditions of probation contained within the PSR. He does not object to a single fact contained within the PSR, but to multiple probation conditions. What these examples show is that the defense counsel and defendant had reviewed the PSR. It did not have knew how to object to the PSR and opted not to do it. Now, in the submissions, this issue was never raised in the district court and the briefs suggest that the defendant was not taking issue with his ability to review this PSR and that he actually did review the PSR and had no objections to it. This is an example of harmless error because the defendant, as the record shows, did have an opportunity to review the report, did talk to his attorney about it, and disputed the issue. Any disputed issues were addressed. And a key fact here is there were no disputed issues raised during the course of the sentencing hearing. Not a single one. The only issue that the defendant raises at this point is this issue about word choice as far as the defendant's relationship with Castle. And really, it is a word choice. What the judge was making clear at sentencing is the defendant was a long time trusted employee of both Castle and Tower. And there can't be any dispute to that. This is the defendant that signed three contracts, one in 2008, one in 2010, and one in 2012. The defendant signed those three contracts for public projects in Markham. One was $8 million approximately, one was $10 million, and one was about $3 million. So he signed contracts of over $21 million on behalf of these three companies. I think the record is perfectly clear that he was a very trusted employee and the judge's point was made. The fact that he chose vice president, president, or officer is just word choice. It doesn't affect the outcome. Which again, is harmless error. Now as to the second issue that the district court— Do you agree, Mr. DeLear, that that issue was forfeited? In the district court? It was not raised in the district court. It was not raised in the district court. Yes, Your Honor. The defense counsel—and I should also note, Your Honor, the defendant himself and defense counsel were given an opportunity during the course of the sentencing hearing to address directly the district court. Defendant opted to say nothing at all. Defense counsel didn't correct anything beyond what he had already said during the course of the sentencing hearing. So there was ample opportunity to raise that issue. What about Mr. Shepard's argument that the defendant himself wasn't given the opportunity and that's what we should focus on rather than the lawyer having the opportunity? Well, Your Honor, the defendant did have an opportunity to address the court. The district court did specifically ask the defendant if he had anything to say and this was towards the latter portion of the sentencing hearing and he just declined to say anything. Now as to the second issue that the district court somehow erred by failing to adopt the there is no federal rule that mandates the district court to orally adopt the PSR at sentencing. Instead, the federal rule of criminal procedure 32 just requires the district court to resolve disputes that are raised during the course of the sentencing hearing and adopting the PSR can be a means to resolve those disputes. Again, at this sentencing hearing, there was not a single factual dispute between this defendant and the government that the district court had to resolve. And so whether or not the judge adopted the sentencing, one, there's no rule requiring him to adopt the PSR orally at the sentencing hearing. But secondly, there was no point. It went right to the 3553 factors and then the judge did exactly what this court asked him to do, which is then analyze the 3553 factors and determine a just sentence, which is what the court did here. Now, as the third issue, the district court did not err at the sentencing hearing by relying on a clearly erroneous fact. And to this, the district court referred to Nancy Blum as a defense witness, which is accurate. Nancy Blum lied during her direct examination. And it's important to understand that the defendant relied on Nancy Blum's testimony in closing argument. The defendant argued that the payments, the bribe payments that were made from the defendant to Webb were somehow legitimate. Nancy Blum was the only witness to introduce any evidence that would support that argument. And so there's no doubt that the defendant relied on Nancy Blum's testimony. It's also important to understand how this issue came up, because again, the district court judge was doing what this court asked the district court judge to do, which is to resolve disputes. Nancy Blum's testimony came up as a dispute when Tower suggested that Nancy Blum did not lie. During the course of the sentencing hearing, it's important to recognize that it was a joint sentencing hearing. In other words, the 3553 factors raised by the government were addressed to Tower and Jarvis at the same time. So the judge heard argument as to both at the same time from the government and then heard from each defendant separately. When it was Tower's opportunity to be heard, the Tower's counsel said that Nancy Blum didn't lie. There's no indication that she lied. And at that point, there was a dispute. And the district court explained that he disagreed, that the jury, he doesn't believe that jury believed Nancy Blum, and more directly said he does not believe Nancy Blum. And an example that he gave is she said that this payment to CAT, which is a fictitious company, phony company created by Webb to deposit his bribes, that that shell company had actually done legitimate work when the judge said the company didn't even exist. In other words, it was a fiction. So, given the fact they were both sentenced at the same time, the district court judge did as he was instructed, which is basically to resolve the dispute as to whether or not Nancy Blum had testified or, excuse me, had lied on the stand. And even if the judge were to focus on this factor and did consider this factor with respect to the defendant's sentencing, any error, it wasn't error, but even if it was error, it was harmless because the district court judge relied, more heavily relied on other factors during the course of the sentencing. The sentencing was driven by the severity of the offense, that this was an impoverished community that had been taken advantage of, that the defendant had no respect for the law, that even at the time of sentencing, had not accepted that he had committed a crime and negatively impacted the citizens of the city of Markham. And that the defendant, you know, the volume, how significant the bribes were, as well as the profit to Tower, over a million dollars. I've addressed the issues that defense counsels raised during the course of the oral argument. Unless the court has questions for me, the government would just ask that the court affirm the conviction and the sentence. All right. Thank you, Mr. DeLear. Thank you. Shepard, rebuttal. In response to your Honor's inquiry about any other evidence other than Nancy Blum regarding work that K.F. may have done, I do want to note that the government's witness, Mr. Kielbasa, did testify that he observed remodeling work being done at the Tower office in 2011. And that's as we plied in our brief on page 11. So, there was at least, that could have been argued as an inference. Regarding the substantive... You'd have to take the inference that that remodeling was done by Kat. He didn't testify that Kat did that. Correct. And I know, of course, when you're talking about closing argument, what was argued could have been based on inferences. The, just the substantive reasonableness is to the sentence. One issue, the government in its sentencing memorandum of Thomas Summers, the other contractor who was indicted in this case, but then severed before trial, they argued in their sentencing memorandum that under 3553A6 Summers, even though he was acquitted of conspiracy to commit bribery, had analogous conduct, several similarities, and they argued in his sentencing memorandum that he should be compared to Jargis. We argue the same. He should be compared to Jargis. He received one year for his sentence. He was acquitted of the conduct that Jargis is charged with. He was found guilty of a section 1001 count, but the government argued in its sentencing memorandum on Summers that he should be compared to Jargis, and we're asking the court to consider the same on that. Was that comparison in your brief, Mr. Shepard? We argued that he should be compared to Summers in our brief. And the government, in their sentencing memorandum on Summers, and it was document 256 in this 14 and 11, that the government, quote, both defendants' offense conduct shared numerous material similarities, including the underlying nature of the conduct itself, its severity, and its impact on the Markham community. And Summers received a one-year sentence. Just briefly as to the other issues. You didn't make that argument to the district court, though, did you? I know you made it here, but you didn't make a 3553A6 disparity argument below. I did not. I was not the lawyer at sentencing, but it was not made. Just as to briefly as to the issue of whether the evidence as to Summers and Leckie should have been admitted. I want to point out that there was no curative instruction when they allowed that evidence about Summers and Leckie, who had nothing to do with Michael Jargis. Additionally, Leckie was deceased before the trial, so Michael Jargis, of course, could not have called him. Summers was a defendant in his own case, so it's not as though Jargis could have even called Summers or Leckie to rebut the evidence that the government introduced to them. I just wanted to add that point of clarification to our brief. And our prayer for relief is for a remand. Of course, we're not asking for a reduction in the sentence. At a remand, the judge can confirm, did he read his PSR? The judge can confirm what facts he will rely on at sentencing. The judge could consider anything else that's appropriate at remand considering the defendant's age and his health. I will note that it's in the record the case has been extended his surrender date based on the fact that he had COVID. If so, if there is a remand, this isn't going to be for naught, I'm proffering. One thing in rebuttal as to the government's point about the lawyer clearly read the PSR. That's not our point, but this court has held that's not enough. At no point was there any indication that Mr. Jargis read the PSR. Thank you, your honors. Just briefly, Mr. Shepard, I was just taking a look and saw that apparently Mr. Summers was not sentenced until after this appeal was already pending. So you really couldn't make that disparity argument in the district court. What accounts for the disparity in the guideline ranges for Mr. Jargis and Mr. Summers? The, because Mr. Summers was only convicted of lying to a federal agent, his guidelines were not driven up by the monetary amounts involved in the bribe in the wire fraud in Mr. Jargis's case. Thank you. Thank you. Thanks very much to both counsel. The case will be taken under advisement.